# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )      Case No. 24-147M
ROSE GOLD COLORED IPHONE 13 PRO MAX CURRENTLY IN THE )
CUSTODY OF LAW ENFORCEMENT )
)

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____Delaware_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371, 2261A(2)(B), and 875(d); 1956; and 1343 | Conspiracy to Cyberstalk and send Interstate Threats; Money Laundering, including Money Laundering Conspiracy; Wire Fraud |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

/s/ Kimberly Anderson
*Applicant's signature*

Kimberly Anderson, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means)*.

Date: May 10, 2024

*Judge's signature*

City and state: Wilmington, DE     Hon. Sherry R. Fallon, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ROSE GOLD COLORED IPHONE 13 PRO MAX CURRENTLY IN THE CUSTODY OF LAW ENFORCEMENT | Case No. 24- |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Kimberly Anderson, a Special Agent with the Federal Bureau of Investigation ("FBI"), San Diego, California, office, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a rose gold colored iPhone 13 Pro Max (the "SUBJECT DEVICE") belonging to HADJA KONE (hereafter "KONE") that is currently in the custody of law enforcement. The SUBJECT DEVICE is more fully described in Attachment A. Your Affiant seeks the extraction from the SUBJECT DEVICE of the electronically stored information described in Attachment B.

2. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since June 2014. I am currently assigned to the Violent Crimes Against Children ("VCAC") program for FBI San Diego in California. My current position has vested me with the authority to investigate violations of federal criminal law, to include cases involving child exploitation and the distribution, receipt, possession, production, advertisement, and transmission of child sex abuse material ("CSAM"), cyberstalking, wire fraud, and money laundering. I attended 22 weeks of agent training at the FBI Academy in Quantico, VA. I have extensive experience in numerous investigative disciplines to include child exploitation, cyber-based

1

investigations, financial crimes, identity theft, and fraud. I have participated in many aspects of criminal investigations to include reviewing evidence, conducting physical and electronic surveillance, and the execution of search and arrest warrants.

3. As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4. The facts in this affidavit come from my own personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. I have not, however, withheld any fact necessary to a determination of probable cause.

5. The United States is investigating multiple individuals, including KONE for engaging in an international online "sextortion" scheme that involves violations of the following: 18 U.S.C. §§ 371 (conspiracy), 1343 (wire fraud), 875(d) (interstate threats), 2261A(2)(B) (cyberstalking), and 1956 (money laundering) (hereinafter the "SUBJECT OFFENSES"). As discussed in more detail below, I submit that there is probable cause to believe that, since at least 2020, KONE has committed the SUBJECT OFFENSES, in large part by way of a cellular phone.

6. KONE was arrested by the FBI on April 12, 2024, at the FBI Wilmington Resident Agency, located at 500 Delaware Ave, Suite 300, Wilmington, DE 19801. The arrest was made pursuant to an indictment against KONE for various charges related to the aforementioned sextortion scheme.[1] The SUBJECT DEVICE was seized from KONE during the search incident to arrest. The SUBJECT DEVICE has been stored at the FBI Wilmington office since her arrest.

---

[1] Criminal action number 24-42-GBW.

7. As explained below, there is probable cause to believe that KONE used the SUBJECT DEVICE to access online communications platforms to communicate with co-conspirators, among other activities. As such, there is probable cause to believe the SUBJECT DEVICE will contain evidence, instrumentalities, contraband, and/or fruits of the SUBJECT OFFENSES. There is thus probable cause to search the SUBJECT DEVICE described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of the SUBJECT OFFENSES, as further described in Attachment B.

## SUBJECT OFFENSES

8. Title 18, United States Code, Section 371 states the following, in relevant part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, [they have violated the law].

9. Title 18, United States Code, Section 1343 states the following, respectively, in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, [has violated the law].

10. Title 18, United States Code, Section 875(d) states the following, in relevant part:

Whoever, with intent to extort from any person, firm. . . any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, [has violated the law].

11. Title 18, United States Code, Section 2261A states the following, in relevant part:

Whoever (2) with the intent to . . . harass, intimidate . . . uses the mail, any interactive computer service or electronic communication service or electronic communication system

3

of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—(B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A), [has violated the law].

12. Title 18, United States Code, Section 1956 states the following, in relevant part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—(A)(i) with the intent to promote the carrying on of specified unlawful activity…or (B) knowing that the transaction is designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law, [has violated the law], or

(a)(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—(A) with the intent to promote the carrying on of specified unlawful activity; or (B)knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law, [has violated the law].

(h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

**PROBABLE CAUSE**

13. KONE was arrested by the FBI on April 12, 2024 in Wilmington, DE for her involvement in the international sextortion scheme outlined below. KONE was indicted by the grand jury on April 11, 2024, along with co-conspirator SIAKA OUATTARA (hereafter "OUATTARA"), who is based in Cote d'Ivoire. OUATTARA has not been arrested by the FBI for the charges he faces in the United States. However, OUATTARA was arrested by Ivorian authorities on February 24, 2024 and remains in custody in Cote d'Ivoire facing charges for his

4

involvement in the sextortion scheme. The Delaware-based money mule network for the sextortion scheme, and KONE and OUATTARA's involvement in the scheme, is outlined below.

14. From in or around May 2020 and continuing through in or around December 2022, in the District of Delaware and elsewhere, KONE, OUATTARA, and additional known and unknown co-conspirators operated an international, financially motivated "sextortion" and money laundering scheme that conspired to engage in, and did engage in, wire fraud, cyberstalking, interstate threats, and money laundering. As described below, financially motivated "sextortion" refers to the practice of obtaining a victim's sexual photographs and/or videos, threatening to distribute the victim's sexual material to others, and demanding that the victim pay money to avoid the threatened distribution.

15. OUATTARA, operating from Côte d'Ivoire, among other roles, identified and sextorted victims utilizing a network of Delaware-based money mules, including KONE, to assist him with laundering the victims' illegally obtained funds.

16. KONE, primarily operating from the District of Delaware was, among other roles, a money mule.[2] She collected victims' funds into her own financial accounts, including accounts with peer-to-peer ("P2P") payment transfer services such as CashApp and Apple Pay, and into financial accounts in others' names which she controlled. KONE also provided other co-conspirators with access to her accounts, for use in the conspiracy. KONE further recruited other

---

[2] "Money mules" were co-conspirators who received victims' funds and then transferred the funds to others, including those who were located overseas, all in an attempt to conceal the nature, location, source, ownership, and control of the funds. Money mules used their own financial accounts, as well as financial accounts belonging to other money mules under their control, and financial accounts belonging to other unwitting victims whose accounts were exploited and co-opted by members of the conspiracy.

individuals to serve as money mules to receive and transfer funds at her direction. KONE also recruited other individuals to provide her with direct access to, and control of, their financial accounts.

17. Ultimately, OUATTARA, KONE, and others known and unknown, cyberstalked, threatened, and attempted to sextort approximately $6 million from thousands of potential victims, using the conspiracy's CashApp and Apple Pay accounts alone, and successfully extorted approximately $1.7 million from those victims. Significant sums of money were also transferred from victims to co-conspirator's accounts using other P2P payment transfer services, including Zelle, PayPal, Venmo.

18. From at least in or about May 2020 and continuing through at least in or about December 2022, KONE, OUATTARA, and others known and unknown opened multiple online accounts with various social media and communications providers, including Instagram, Google, Snapchat, and WhatsApp; "P2P" payment transfer services like CashApp, Zelle, PayPal, Venmo, and Apple Pay; and accounts with various financial institutions. They often used other people's identities, both real and fictitious, in opening or operating these accounts.

19. OUATTARA posed as young, attractive females online and initiated online communications with thousands of potential victims, who were primarily young men and included minors from the United States, Canada, and the United Kingdom. OUATTARA offered to provide and/or provided victims with sexual photographs, video recordings, and/or "web cam" or "live video chat" sessions of what he falsely portrayed to be an attractive young female, when in fact he was the one operating the accounts.

20. OUATTARA fraudulently induced victims to provide him with the victims' "reciprocal" sexual photos, videos, and/or web cam/live chat sessions. Unbeknownst to the

victims, during the web cam/live video chats, OUATTARA surreptitiously recorded the victims as they exposed their genitals and/or engaged in sexual activity (typically masturbation) (collectively "sexual images"). Shortly thereafter, OUATTARA sent the victims copies of their fraudulently obtained sexual images.

21. OUATTARA then threatened to distribute the victims' sexual images, together with recordings of the victims' faces, to the victims' friends, family members, significant others, employers, and co-workers, and to publish the victims' sexual images widely online, unless the victims transferred funds to designated recipients, typically initially demanding approximately $100-$1,000, and in some cases ultimately demanding tens of thousands of dollars over time. In many instances, OUATTARA expressly threatened to ruin the victims' reputations, relationships with their friends and family, employment, and their entire lives.

22. OUATTARA falsely and fraudulently promised victims that if the victims transferred the funds as demanded, the victims' sexual images would be deleted. In fact, the victims' images were not deleted. In numerous instances, even after the victims confirmed they sent the demanded funds, OUATTARA continued to demand additional payments from the victims and to threaten to distribute the victims' sexual images. Additionally, even after a victim informed OUATTARA that the victim was a minor, he continued to sextort the victim.

23. On more than one occasion, if victims did not pay the demanded amounts, OUATTARA carried through with the threats and distributed the victims' sexual images to the victims' friends and family members.

24. OUATTARA, KONE, and others operated an infrastructure to transfer the funds illegally obtained from these victims to OUATTARA in Côte d'Ivoire, while concealing the nature, location, source, ownership, and control of the funds.

7

25. OUATTARA provided detailed payment instructions to victims. He directed victims to pay designated amounts of money to designated money mules, including to KONE, via designated payment methods. Payment methods included the following: (1) P2P payment transfer services like CashApp, Zelle, PayPal, Venmo, and Apple Pay, all such transfers payable to accounts controlled by the money mules; (2) money transfer services like Western Union and MoneyGram, payable to the money mules; (3) U.S. Postal money orders, payable to the money mules and mailed to their residential addresses; and (4) stored value ("gift") cards that victims had loaded with funds.

26. OUATTARA, KONE, and others then used a variety of methods to collect and "cash out" the victims' funds, including by: (1) receiving funds into the money mules' P2P accounts they controlled, transferring funds to linked U.S. bank accounts, and withdrawing the funds as cash; (2) retrieving cash in-person at locations of money transfer services like Western Union; (3) receiving U.S. Postal money orders that victims mailed to them and cashing the money orders at designated locations; and (4) obtaining the identifiers of stored value cards and purchasing and receiving shipment of goods, including luxury clothing, computers, and cell phones.

27. OUATTARA, KONE, and others then used a variety of methods to transfer the victims' funds, after they had been converted to cash or goods, to OUATTARA overseas, including by (1) delivering cash in-person to a money transfer service location like Western Union, MoneyGram, Sendwave, or Orange, and transferring the funds to OUATTARA; (2) delivering cash in-person to a New York-based money transmitter ("Individual A"), who arranged for funds to be converted to local currency and paid out in Côte d'Ivoire to OUATTARA; and (3) re-shipping the purchased goods to OUATTARA a, either directly or through Individual A.

28. After victims successfully transferred funds to the designated accounts, OUATTARA directed the victims to provide "proof of payment" (e.g., a photograph/screenshot that displayed the successful P2P transfer or the receipt for the U.S. Postal money order). Typically using the electronic communications provider WhatsApp, OUATTARA in turn provided the victims' "proof of payment" screenshots to KONE (and other mules), and vice versa, so that they were notified of incoming victim funds and could withdraw the funds quickly, before the accounts were closed or suspended, or the transfers blocked or refunded. In many instances, the victims' "proof of payment" screenshots contained the victims' sexual images, the phony female social media profile photographs used to sextort them, and words and phrases the victims added in the text of the payment (for example, in a memo line), such as "delete videos," "blackmail," and "release."

29. In some instances, in order to further disguise the true nature of the victims' transfers of funds, OUATTARA directed victims to use false and misleading subject or memo lines to accompany the transfer, such as "for charity" or "Glovo," which is an Ivorian food delivery service.

30. On August 23, 2023, law enforcement executed search warrants upon the homes of various Delaware-based money mules, including KONE. Pursuant to those search warrants, law enforcement seized the devices of these money mules, including KONE'S. A review of KONE'S phone—specifically her WhatsApp chats—revealed further direct evidence of her involvement in and knowledge of the scheme, and provided a significant portion of the basis for the indictment.

31. For example, KONE'S WhatsApp communications showed numerous "proof of payment" screenshot exchanges with OUATTARA; messages from OUATTARA calculating KONE'S cut of a victim payment; screenshots of completed wire transfers that KONE sent to

9

OUATTARA after receiving and cashing out victim funds; and discussions about this being risky activity, being afraid of getting caught, and the best way to launder money. KONE'S WhatsApp communications also showed the recruitment of, and discussion with, other money mules in relation to the scheme.

## THE SUBJECT DEVICE

32. After the seizure of KONE'S phone during the August 2023 search warrant execution, KONE obtained the SUBJECT DEVICE as her new cell phone device. Given KONE'S use of her cell phone prior to the search warrant execution, there is probable cause to believe that KONE used the SUBJECT DEVICE to communicate with known and unknown co-conspirators regarding the seven FBI search warrants that were executed at the homes of co-conspirators in August 2023. These communications may provide valuable evidence in terms of the identification or confirmation of additional co-conspirators, as well as evidence of mens rea in relation to the sextortion scheme.

33. There is also probable cause to believe that KONE's phone will contain the new telephone numbers of known co-conspirators whom the FBI intends to arrest later in 2024, whose whereabouts are currently unknown to the FBI. FBI received information that at least three co-conspirators have moved locations and/or were going to be dismissed from their rental agreements where FBI had known them to previously live. Additionally in August 2023, the FBI learned that two Delaware-based co-conspirators are no longer living at their parents' residences, and their locations remain unknown. The SUBJECT DEVICE may therefore assist FBI in identifying the current location and/or telephone numbers of the co-conspirators the FBI needs to locate in anticipation of an arrest in the coming months.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

35. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate electronically stored information that might serve as direct evidence of the crimes described on the warrant. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant."

36. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

37. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

11

physical intrusion onto a premises. Consequently, I submit there is good cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

38. Based on the foregoing, I request that the Court issue the proposed search warrant.

Respectfully submitted,

*/s/ Kimberly Anderson*
Special Agent Kimberly Anderson
Federal Bureau of Investigations

Sworn to me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 on this __10th__ day of May 2024.

_____
THE HONORABLE SHERRY R. FALLON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

The property to be searched is:

A rose gold colored iPhone 13 Pro Max, seized from Hadja Kone on or about April 12, 2024, and currently in the custody of the FBI Wilmington Resident Agency in Wilmington, Delaware.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Information to be Seized

1.      All records on the SUBJECT DEVICE described in Attachment A that relate to violations of the SUBJECT OFFENSES listed in the Affidavit, from August 23, 2023 to the present, including:

   (a) Evidence indicating the SUBJECT DEVICE user's knowledge and/or intent as it relates to the crime(s) under investigation;

   (b) records of or information about the SUBJECT DEVICE'S Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

   (c) records and information relating to the extortion of any person;

   (d) records pertaining to the August 2023 search warrant execution;

   (e) records pertaining to the identification of co-conspirators to the SUBJECT OFFENSES;

   (f) records indicative of co-conspirator communications in relation to the SUBJECT OFFENSES listed in the Affidavit;

   (g) passwords, encryption keys, and other access devices that may be necessary to access the DEVICES that are found stored within the DEVICES.

2.      Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

   As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.